UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

APR 0 6 2018

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| CITY OF SAN ANTONIO, § § *Plaintiff,* § § v. § § TIME WARNER CABLE TEXAS, LLC, § d/b/a SPECTRUM AND CHARTER § COMMUNICATIONS, § § *Defendant.* § | Civil No. SA-17-cv-01232-OLG |

## MEMORANDUM AND ORDER

On this day, the Court considered Defendant Time Warner Cable Texas, LLC's Motion to Dismiss (the "Motion") (docket no. 5). Having reviewed and considered the Motion and the related briefing, the Court concludes that the Motion should be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The present dispute concerns the alleged underpayment of cable franchise fees. Plaintiff City of San Antonio (the "City") alleges that Defendant Time Warner Cable Texas, LLC ("TWC") underpaid certain franchise fees that are owed to the City pursuant to Chapter 66 of the Texas Public Utilities Code. *See* docket no. 1-1 ¶¶ 31-34.

In 2005, the Texas State Legislature enacted Chapter 66 of the Texas Public Utilities Code, which requires cable providers to provide cable or video service in municipalities pursuant to a State Issued Certificate of Franchise Agreement ("SICFA") approved by the Texas Public Utility Commission ("PUC"). *See* Tex. Util. Code Ann. §§ 66.003 & 66.004. A SICFA authorizes a cable provider to use municipal right-of-ways ("ROWs") for its cable infrastructure

so long as the cable provider makes quarterly franchise payments to the municipality in which it provides service. *See* Tex. Util. Code Ann. §§ 66.005 & 66.010. Specifically, Chapter 66 states that a cable provider's quarterly franchise payment must be equal to five percent (5%) of "gross revenues" earned by the franchise holder in that city. *Id.* at § 66.006(a). Chapter 66 also requires that the franchise holder pay the municipality an additional one percent (1%) of the provider's "gross revenues" to support public, educational and government access channels.[1] *Id.* at § 66.006(b). Finally, Chapter 66 authorizes municipalities to review the business records of the cable service provider to ensure compliance with the payment of Franchise Fees. *See id.* at § 66.005(b). As of January 1, 2006, TWC began operating in San Antonio under a SICFA that was authorized by the PUC.[2] *See* docket no. 1-1 ¶ 13.

The City alleges that—in February 2009—it exercised its audit rights in order to determine whether TWC had properly reported and paid its Franchise Fees from 2006 to 2009. *See id.* at ¶ 14. The City asserts that TWC refused to provide certain information related to the audit, and thus—in October 2009—the City filed a petition in state court requesting that TWC be compelled to provide the information. *See id.* at ¶¶ 14-15. On April 18, 2011, the state court issued an order compelling TWC to produce relevant financial documents within sixty days. *See id.* at ¶ 16. The City asserts that TWC continued to avoid producing documents and failed to fully comply with the state court's order. Docket no. 1-1 ¶¶ 17-18. The City further alleges that it was not able to complete the audit until 2014, and that even then, the audit was "based on the incomplete documentation TWC provided the City." *Id.* at ¶ 19. In any event, the City alleges

---

[1] Collectively, the five percent (5%) and one percent (1%) fees will be referred to as the "Franchise Fees" in this Memorandum and Order.

[2] Prior to January 1, 2006, TWC operated in San Antonio pursuant to a negotiated "Municipal Franchise Agreement," under which TWC also paid franchise fees for access to municipal ROWs. *See* docket no. 1-1 ¶ 8. The Municipal Franchise Agreement between TWC and the City expired on December 31, 2005. *See id.* at ¶ 12.

that the audit revealed that TWC had miscalculated and/or underreported—and therefore underpaid—its Franchise Fees.[3] *Id.* at ¶¶ 19 & 25.

On October 23, 2017, the City filed a Petition in the 225 Judicial District, Bexar County, Texas. *See* docket no. 1-1. The Petition asserts that TWC violated the Texas Utilities Code and includes several related causes of action and/or requests for relief. *See id.* Specifically, the City requests actual and exemplary damages, declaratory relief, an accounting, the creation of a constructive trust, and attorney's fees and costs. *See id.* On December 4, 2017, TWC removed the case to this Court, and on December 11, 2017, TWC filed the pending Motion seeking dismissal of the City's claims. *See* docket no. 5.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), a complaint is considered well pled if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) is considered in conjunction with Fed. R. Civ. P. 12(b)(6), which provides that a complaint may be dismissed if it "fails to state a claim upon which relief can be granted." Courts apply these rules through the process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As a general rule, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, dismissal is appropriate under Rule 12(b)(6) if, assuming the truth of all facts alleged in the complaint, it fails to state a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In order to state a plausible claim to relief, the

---

[3] Specifically, the Petition alleges that TWC (i) underreported subscriber revenue, (ii) underreported advertising revenue, (iii) applied an incorrect calculation methodology for its Franchise Fees, (iv) underreported package early termination fees, and (v) did not report third-party advertising fees. *See* docket no. 1-1 ¶ 19.

complaint must include "allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Those allegations may be "either direct or inferential." *Id.* In applying Rule 12(b)(6), the Court must distinguish between pleadings of fact, which are presumed as true, and statements of legal conclusion, which are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 679. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265 (1986)). Throughout the Rule 12(b)(6) analysis, "[t]he complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Morgan v. Swanson*, 659 F.3d 359, 370 n.17 (5th Cir. 2011) (en banc) (quoting *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)).

A complaint is not subject to dismissal under Rule 12(b)(6) on the basis that it fails to allege facts disproving a possible affirmative defense. *See Wilson v. Kimberly-Clark Corp.*, 254 Fed. Appx. 280, 287 (5th Cir. 2007). However, "when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994). Finally, when analyzing a motion to dismiss under Rule 12(b)(6), the Court is generally limited to considering the contents of the pleadings and the attachments thereto. Fed. R. Civ. P. 12(b)(6); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

## ANALYSIS

TWC's Motion asserts several grounds on which it contends that the City's Petition should be dismissed in whole or in part. As an initial matter, TWC asserts that all of the City's

causes of action and requests for relief are barred by the equitable doctrines of laches and waiver. *See* docket no. 5 pp. 6-9. TWC also separately asserts that the City has failed to plead viable claims with respect to the Petition's request for (i) an accounting, (ii) the creation of a constructive trust, and (iii) declaratory relief. *See id.* at 5 pp. 10-13. The Court will address each of TWC's arguments in turn.

### A. Laches

TWC first argues that all of the City's claims should be dismissed because they are barred by the doctrine of laches. *See* docket no. 5 pp. 6-8. Although municipalities are generally exempt from statute of limitations defenses,[4] the defense of laches may be asserted "when a city unreasonably delays asserting its rights." *See Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638-39 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Under Texas Law, a laches defense has two elements: "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay." *Exxon Corp v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997) (quoting *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)). A laches defense may be asserted at the motion to dismiss stage if it "is clear from the face of [the] complaint" that plaintiff's claims are barred. *See Bernardo Footwear, LLC v. Ashley Nettye, Inc.*, No. H-11-2057, 2012 WL 1076252, at *4 (S.D. Tex. Mar. 28, 2012).

It is not clear from the face of the Petition that the City's claims are barred by a laches defense. With respect to the first element, it appears true from the face of the Petition that the City's claims could have been filed earlier. But that alone does not satisfy the first element of the

---

[4] Tex. Civ. Prac. & Rem. Code § 16.061(a) provides that a right of action of the state or any county or municipality may not be barred by certain statutory defenses, including the expiration of the limitations period.

5

laches defense, which also requires a showing that plaintiff's delay was "unreasonable" or "inexcusable." *See Exxon*, 109 F.3d at 1082; *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). The application of the laches defense is a fact-specific inquiry, and the Court cannot—on the face of the Petition—conclude that the City's actions reflected an "unreasonable" or "inexcusable" delay. *See Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2008 WL 11348032, at *1 (E.D. Tex. Oct. 16, 2008) ("[W]hile the court may ultimately conclude that [Defendant's] laches defense is meritorious, this is a fact-intensive inquiry which requires consideration of multiple factors and shifting burdens of proof.").

With respect to the second element, the Court finds no support for TWC's assertion that "the complaint's allegations . . . confirm that TWC detrimentally relied on the City's failure timely to [sic] challenge TWC's franchise fee payments." *See* docket no. 10 p. 7. TWC does not identify the portions of the Petition that allegedly demonstrate TWC's detrimental reliance, nor does TWC's briefing provide details or explanation beyond conclusory claims that it detrimentally relied on the City's actions.[5] *See* docket nos. 5 p. 8; 10 pp. 7-8. A more developed factual record may ultimately demonstrate TWC's detrimental reliance on the City's alleged delay in asserting its rights, but the Petition does not.

Finally, the fact that the Petition's allegations do not *disprove* the affirmative defense of laches does not mean TWC is entitled to dismissal. *See Wilson*, 254 Fed. Appx. at 287. And

---

[5] Just as a plaintiff may not rely on a conclusory recitation of the elements of the claims in its complaint, a defendant may not rely on conclusory allegations with respect to the application of an affirmative defense. *See, e.g., Eidos Display, LLC v. Chi Mei Innolux Corporation*, No. 6:11-CV-201-JRG-JDL, 2017 WL 6268800, at *6 (E.D. Tex. Dec. 8, 2017) (finding that "assertion that documents which might have existed no longer do, coupled with [ ] conclusory arguments about 'loss of evidence,' does not carry [defendant's] burden to establish prejudice" with respect to equitable estoppel defense); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992) (finding that defendants failed to show prejudice with respect to laches defense through "[c]onclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence").

6

similarly, the fact that the City raised new allegations in its response to TWC's Motion that were not included in the City's Petition (*see* docket no. 10 p. 6) does not make the City's claimed entitlement to relief less plausible. To be clear, it is true that only the allegations in the complaint may be accepted when analyzing a motion to dismiss, and for the purposes of this Motion, the Court has not accepted as true any factual allegations beyond those included in the City's Petition. But the details included in the City's response further illustrate that the allegations in the Petition *do not necessarily rule out* a finding that (i) the City's actions did not constitute an "unreasonable" or "inexcusable" delay and/or (ii) TWC did not detrimentally rely on the City's actions. That is all that is required at this stage for the City's claims to survive dismissal with respect to TWC's laches defense.

Because it is not clear from the face of the Petition that the City's claims are barred by the doctrine of laches, TWC is not entitled to dismissal on that basis. Accordingly, TWC's Motion is denied with respect to its laches argument.

### B. Waiver

TWC next argues that the City's claims should be dismissed because they are barred by the doctrine of waiver. *See* docket no. 5 pp. 8-9. Under Texas law, waiver "is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "Silence or inaction, for so long a period as to show an intention to yield a known right, is [ ] enough to prove waiver." *Bott v. J.F. Shea Co.*, 388 F.3d 530, 533 (5th Cir. 2004) (quoting *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)). However, "the issue of waiver becomes a matter of law only where material facts and circumstances are undisputed or clearly established and there is no room for argument or inference." *First Interstate Bank of Ariz., N.A. v. Interfund*

*Corp.*, 924 F.2d 588, 595 (5th Cir. 1991). Thus, "[w]aiver is typically a fact-intensive inquiry not resolved on a motion to dismiss." *Tesco Corp. v. Weatherford Intern., Inc.*, 632 F. Supp. 2d 654, 658 (S.D. Tex. 2009).

The Court finds that it is not clear from the face of the Petition that the City's claims are barred by the doctrine of waiver. TWC asserts that "[t]he City's allegations 'clearly establish' the City knowingly accepted TWC's payments *without protest.*" *See* docket no. 10 p. 8 (emphasis added). But TWC again fails to identify the portion of the City's Petition on which it relies for that proposition, and the Court cannot find clear support for TWC's contention. For TWC to be entitled to dismissal, the Petition would have to—*on its face*—"clearly" demonstrate (i) the City's intentional relinquishment of its right to any under-paid amounts, or (ii) intentional conduct by the City inconsistent with claiming its rights to any under-paid amounts, such as silence or inaction for so long a period as to yield its rights. *See First Interstate Bank of Ariz.*, 924 F.2d 588 at 595; *Ulico Cas. Co.*, 262 S.W.3d at 778; *Bott*, 388 F.3d 530 at 533. To do that, the Petition would have to shed light on the City's intent, and the City's relevant conduct or inaction would have to demonstrate "an unequivocal intention [by the City] to no longer assert [its] rights." *See First Interstate Bank of Ariz.*, 924 F.2d 588 at 595 (quoting *Weisbart & Co. v. First Nat'l Bank of Dalhart, Tex.*, 568 F.2d 391, 396 (5th Cir. 1978)).

Here, the Petition does not contain detailed allegations conclusively proving *or* disproving the City's intent to relinquish its rights.[6] At this stage, that ambiguity is viewed in the light most favorable to the City, as the plaintiff is not required to include allegations *disproving* Defendant's affirmative defenses in order to survive a 12(b)(6) motion. *See Wilson*, 254 Fed.

---

[6] As discussed above, the Court has not accepted as true any factual allegations that were not included in the Petition. Thus, although certain allegations in the City's response, if true, may indicate that the City did not intend to relinquish its rights, those assertions were not relied upon by the Court in reaching the conclusions in this Memorandum and Order.

8

Appx. at 287; *Morris v. Bush*, No. 3:98-CV-2452-G, 1999 WL 417928, at *3 (N.D. Tex. June 22, 1999) (noting that because plaintiff's complaint does not raise the issue of waiver, it is not subject to 12(b)(6) dismissal on that basis). Thus, the Petition's apparent silence as to the City's intent to enforce its rights is not grounds for dismissing the City's claims on the basis of waiver.

Although a more detailed record may ultimately demonstrate waiver on the part of the City, the City's Petition does not allow the Court to reach that conclusion at this stage. Accordingly, TWC is not entitled to dismissal of the City's claims on that basis, and TWC's Motion is denied with respect to its waiver argument.

### C. Accounting

TWC moves to dismiss Count V of the Petition on the basis that the City has failed to state a viable accounting claim. *See* docket no. 5 pp. 10-11. "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Sauceda v. Wells Fargo Bank, N.A.*, SA-12-CV-01094-DAE, 2013 WL 690534, at *2 (W.D. Tex. Feb. 25, 2013) (quoting *Michael v. Dyke,* 41 S.W.3d 746, 754 (Tex. App.—Corpus Christi 2001, no pet.)). "An action for an accounting is a proper action 'when the facts and accounts in issue are so complex that adequate relief cannot be obtained by law.'" *Sauceda*, 2013 WL 690534, at *2 (quoting *Hutchings v. Chevron U.S.A.,* 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied)); *see also Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 243 (5th Cir. 2014). "Granting an accounting is within the discretion of the trial court." *Sauceda*, 2013 WL 690534, at *2; *see also Williams*, 560 Fed. Appx. at 243.

The Petition—as written—does not support the City's claim for an accounting. As an initial matter, the Petition gives no indication that "the facts and accounts in issue are so complex that adequate relief cannot be obtained by law." *See Williams*, 560 Fed. Appx. at 243 (affirming

dismissal of accounting claim because plaintiffs "alleged no facts suggesting the information they seek is complex"); *Ortega v. Ocwen Loan Servicing, LLC*, No. 5:16-CV-00566-XR, 2016 WL 5794803, at *2 (W.D. Tex. Oct. 3, 2016) (dismissing accounting claim because "Plaintiff fail[ed] to allege that the facts and accounts are so complex as to justify an accounting"). The City does not explain why the information sought from TWC cannot be obtained by "standard discovery procedures, such as requests for production, interrogatories, and *subpoena duces tecum*." *Hutchings*, 862 S.W.2d at 762.

Finally, the Court notes that the City's Petition includes allegations that TWC has not complied with prior production orders (*see* docket no. 1-1 ¶¶ 17-18), and the City elaborates on that allegation in its briefing (*see* docket no. 9 pp. 9-10). Thus, the City states that "TWC has shown by its recalcitrant, dilatory and duplicitous tactics that standard discovery procedures will not provide the City with the information sought regarding the amount of Franchise Fees owed by TWC." *Id*. at p. 10. But the City's assertion presupposes that TWC will not comply with its obligations as required by the Federal Rules of Civil Procedure and this Court's orders. Should TWC comply with its mandated obligations, there is no indication from the Petition that the information sought is too "complex" for standard discovery procedures. And in the event TWC fails to comply with its discovery obligations, the City may seek relief for any such non-compliance at that time.

In sum, the City's Petition does not indicate that the facts surrounding the allegedly unpaid Franchise Fees are "so complex that adequate relief cannot be obtained by law." Thus, to the extent the City seeks to pursue a stand-alone equitable claim for an accounting, the Petition—

as written—does not include sufficient facts to warrant such an action. Accordingly, with respect to dismissal of the City's request for an accounting, TWC's Motion is granted.[7]

### D. Constructive Trust

TWC Motion also contends that Count VI of the Petition must be dismissed because the City fails to state a viable claim for the creation of a constructive trust. *See* docket no. 5 pp. 11-12. A constructive trust is an equitable remedy used to prevent unjust enrichment. *Young v. Fontenot*, 888 S.W.2d 238, 242 (Tex. App.—El Paso 1994, writ denied). "[T]he purpose of this equitable remedy is to right wrongs that cannot be addressed under other legal theories." *Medford v. Medford*, 68 S.W.3d 242, 249 (Tex. App.—Fort Worth 2002, no pet.), disapproved of on other grounds by *Mansions in the Forest, L.P. v. Montgomery Cty.*, 365 S.W.3d 314, 318 (Tex. 2012). A party seeking to establish a constructive trust must allege and prove "(1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res." *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2014, pet. denied). "Whether a constructive trust should be imposed at all is within the discretion of the trial court." *Id.*

The City's Petition does not support the imposition of a constructive trust. As an initial matter, the City's allegations do not demonstrate the existence of "a special trust" or "fiduciary relationship."[8] "To impose an informal fiduciary duty in a business transaction, the special

---

[7] As discussed in Section F, *infra*, the City will be afforded an opportunity to amend its Petition with respect to its accounting claim, if able.

[8] The City's briefing does not argue that the City's constructive trust claim is premised on allegations of actual fraud by TWC. In any event, the Petition does not include allegations regarding specific misrepresentations nor does it include the specific details required to meet the heightened pleading requirements for allegations of fraud under Fed. R. Civ. P. 9(b). *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (stating that Rule 9(b)'s pleading "standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent").

11

relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). TWC correctly points out that the challenged fees are mandated by statute and therefore are "not derived from any relationship of trust and confidence." *See* docket no. 5 pp. 10-11. In response, the City asserts that "a special trust between TWC and the City existed prior to, and apart from the statutory requirement that TWC pay Franchise Fees," and the City specifically refers the Court to the parties' prior Municipal Franchise Agreement.[9] *See* docket no. 9 p. 10. But "[a]rms-length transactions entered into for the parties' mutual benefit do not establish a basis for a fiduciary relationship." *Lopez Gutierrez v. Alonso Marquez*, No. 08-CA-412-OG, 2009 WL 10669586, at *3 (W.D. Tex. Oct. 21, 2009). The Petition makes clear that the Municipal Franchise Agreement between the City and TWC was a formal, negotiated, arms-length business agreement. *See* docket no. 1-1 ¶¶ 7-8. Thus, the prior Municipal Franchise Agreement between the City and TWC did not create a special trust or fiduciary relationship on which the City may rely for the creation of a constructive trust. *See Associated Indem. Corp.*, 964 S.W.2d at 288 (holding that pre-existing agreement "was an arms-length transaction entered into for the parties' mutual benefit" and thus did not "justify[ ] a special relationship of trust and confidence"). Because the City has not sufficiently alleged the existence of a "special trust" or a "fiduciary relationship," the City's request for a constructive trust must be dismissed.

Finally, *even assuming* the City did plead allegations demonstrating a "special trust" or a "fiduciary relationship," neither the City's Petition nor its briefing explain how a constructive trust will "right wrongs that cannot be addressed under [the City's] other legal theories." *See Jordan v. Hagler*, 179 S.W.3d 217, 220-21 (Tex. App.—Fort Worth 2005, no pet.) (rejecting

---

[9] As discussed above, TWC operated in San Antonio pursuant to a Municipal Franchise Agreement until December 31, 2005. *See* note 2, *supra*.

plaintiff's request for a constructive trust as a matter of law when plaintiff's alleged injuries "[could] be addressed, and were addressed . . . through other legal theories"). Here, the City's request for a constructive trust seeks unpaid Franchise Fees to which the City alleges it is entitled. *See* docket no. 1-1 ¶¶ 44-46. However, the City also seeks those same unpaid Franchise Fees via its claims for violations of the Texas Utility Code, conversion, and "money had and received." *See id.* at ¶¶ 31-39. Thus, in the event the record ultimately demonstrates that TWC wrongfully underpaid Franchise Fees and that the City is entitled to those underpayments, it does not appear that the imposition of a constructive trust would be necessary to afford the City the relief it seeks. *See Do v. Pilgrim's Pride Corp.*, No. 9:05-CV-238, 2006 WL 2290556, at *8 (E.D. Tex. Aug. 9, 2006) (stating that plaintiff's constructive trust request was "an alternative remedy to recovery of monetary damages").

Accordingly, TWC's Motion is granted with respect to dismissal of the City's request for the creation of a constructive trust.[10]

### E. Declaratory Relief

TWC also moves to dismiss the City's Declaratory Judgment claim in Count I of the Petition. *See* docket no. 5 p. 13. Following removal to federal court, a claim brought under the Texas Declaratory Judgment Act is construed as one brought under the federal Declaratory Judgment Act, Title 28 U.S.C. §§ 2201-2202. *See Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017); *Hillmann v. Anthony*, No. A-07-CA-655-SS, 2007 WL 9701450, at *1 (Oct. 18, 2007). The federal Declaratory Judgment Act "does not create substantive rights," but instead, "is merely a procedural device that enhances the remedies to plaintiffs in federal court."

---

[10] As discussed in Section F, *infra*, the City *will not* be afforded an opportunity to amend its allegations with respect to its constructive trust claims, as the Court finds that any such amendment would be futile given the nature of the business relationship between the parties and the City's other claims seeking similar relief.

*Calderon v. Bank of America N.A.*, 941 F. Supp. 2d 753, 768 (W.D. Tex. 2013). Accordingly, "district courts dismiss requests for declaratory relief when all pleaded causes of action fail." *Sledge v. JP Morgan Chase Bank, N.A.*, No. SA:13-CV-797-XR, 2014 WL 51169, at *4 (W.D. Tex. Jan. 7, 2014) (collecting cases). Because TWC asserts that all of the City's substantive causes of action should be dismissed, TWC also argues that the City's request for declaratory relief is subject to dismissal.

For the reasons set forth in the prior Sections of this Memorandum and Order, the Court has not dismissed all of the City's substantive causes of action. Thus, there are viable, independent causes of actions upon which the City's request for declaratory relief could be premised. Accordingly, TWC's Motion is denied to the extent it seeks dismissal of the City's request for declaratory relief.

### F. Leave to Amend

In response to TWC's Motion, the City requests that it be afforded leave to amend its Petition should TWC's Motion be granted. *See* docket no. 9 p. 12. Rule 15 of the Federal Rules of Civil Procedure allows broad latitude to amend pleadings before trial. Pursuant to Rule 15(a)(2), a party may amend its pleading with leave of court, and the "court should freely give leave when justice so requires." Rule 15(a) "evinces a bias in favor of granting leave to amend," *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003), and "'unless there is a substantial reason,' such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial'." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). However,

leave to amend need not be granted if the amendment would be futile. *See Martin's Herend Imports*, 195 F.3d at 771 & n.4; *Foman v. Davis*, 371 U.S. 178, 182 (1962).

After considering the relevant factors, the Court concludes that amendment *may* be appropriate with respect to the City's request for an accounting. Although the Petition—as written—does not set forth the factual allegations necessary to support the request for an accounting, the City will be granted leave to amend its Petition to cure those defects, *if able*. Thus, the City's request for an accounting will be dismissed without prejudice.

With respect to the City's request for the creation of a constructive trust, however, the Court finds that any amendment would be futile given the existing allegations in the City's Petition. As described above, the Petition makes clear that the City's claims are based on arms-length business agreements and/or statutory obligations, which may not serve as the basis for a special trust or fiduciary relationship.[11] Accordingly, the City's request for a constructive trust will be dismissed with prejudice and without leave to amend.

## CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion to Dismiss (docket no. 5) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

> i. With respect to the City's Request for Accounting, TWC's Motion is **GRANTED**, and the City's Request for Accounting is **DISMISSED WITHOUT PREJUDICE**. Within twenty-one (21) days of the date of this Order, the City may replead its Request for Accounting, if appropriate. If an amended pleading is not filed by that date, the City's Request for Accounting will be dismissed with prejudice.

---

[11] As set forth in Section D, *supra*, the Petition also fails to demonstrate how a constructive trust will "right wrongs that cannot be addressed under [the City's] other legal theories."

    ii.    With respect to the City's Request for Constructive Trust, TWC's Motion is **GRANTED,** and the City's Request for Constructive Trust is **DISMISSED WITH PREJUDICE.**

    iii.    With respect to all other causes of action or requests for relief in the City's Petition, TWC's Motion is **DENIED.**

**IT IS FURTHER ORDERED** that the City confers with TWC as required by Fed. R. Civ. P. 26(f) and Local Court Rule CV-16(c) and submits a proposed scheduling order for the Court's consideration within <u>fourteen (14) days</u> of the filing of this Order.

It is so **ORDERED.**

**SIGNED** this ___6___ day of April, 2018.

_____
ORLANDO L. GARCIA
Chief United States District Judge